**Daniel J. HEMPEL, Appellant**

v.

**Karen S. HEMPEL, Appellee.**

**No. 2013–CA–001503–ME.**

Court of Appeals of Kentucky.

May 16, 2014.

Victoria Ann Ogden, Lauren Adams Ogden, Louisville, KY, for appellant.

James L. Theiss, James Daniel Theiss, LaGrange, KY, for appellee.

Before ACREE, Chief Judge; CAPERTON and VANMETER, Judges.

*OPINION*

ACREE, Chief Judge:

On remand from this Court, the Oldham Family Court re-calculated Appellant Daniel Hempel's child-support obligation. The family court concluded Daniel had overpaid child support in the amount of $2,532.00. The question presented is whether the family court erred when it denied Daniel's request to recoup from Appellee Karen Hempel the amount of child support overpaid. We find no error and affirm.

Daniel and Karen divorced in 2009. By order entered in March 2011, the family court awarded the parties joint custody of

their two children, named Karen as the primary residential parent, and awarded Daniel fairly limited timesharing. The family court also imputed income to Daniel and ordered him to pay $558.50 per month in child support.[1]

Daniel appealed the family court's March 2011 order to this Court. *Hempel v. Hempel,* 380 S.W.3d 549 (Ky.App.2012). This Court concluded that the family court's determination with respect to the parties' time-sharing schedule was based, at least in part, upon a clearly erroneous finding, and found that the family court's decision to impute income to Daniel was not supported by sufficient factual findings. *Id.* at 551–53. This Court remanded the matter to the family court for further consideration of these issues. *Id.*

On remand, the family court received evidence and heard arguments of counsel. By order entered July 1, 2013, the family court reduced Daniel's child-support obligation to $453.00 per month, retroactive to June 2011, and determined Daniel had overpaid child support at a rate of $105.00 per month for a total overpayment of $2,532.00. To recoup the overpayment, the family court authorized Daniel to withhold $211.00 per month for twelve months from the ordered child-support amount.

Karen filed a Kentucky Rules of Civil Procedure (CR) 59.05 motion contesting the family court's decision to allow Daniel to offset or recoup the child-support overpayment. After further consideration, by order entered July 31, 2013, the family court granted Karen's CR 59.05 motion and set aside that portion of its July 1, 2013 order authorizing recoupment. Daniel promptly appealed.

Daniel argues the family court erred when it disallowed recoupment of the overpayment from an available fund and, in turn, intruded upon his constitutional right to appeal. In response, Karen asserts no error occurred because there was no accumulation of benefits not consumed for support from which the overpayment could be retrieved. Both cite to this Court's opinion of *Clay v. Clay,* 707 S.W.2d 352 (Ky. App.1986), as support for their respective positions.

The issue in *Clay* was whether the successful appeal and vacating of a child-support order allows the payor the right of restitution or recoupment for amounts previously, and in retrospect, erroneously paid. 707 S.W.2d at 353. The *Clay* court acknowledged that, "[w]hen a judgment is reversed on direct appeal, it is as though it never existed. Generally this entitles appellant to restitution for all money improperly paid thereunder." *Id.* However, the *Clay* court had to balance that principle with the longstanding view in Kentucky, and elsewhere, that child support orders rest "upon a different footing than ordinary judgments" because child support "derives from the obligation of the parent to the child, not from one parent to another"; child support is designed to be used exclusively to satisfy the direct and indirect needs of the child. *Id.* at 353–54 (citation omitted). *Clay* recognized that child support is different and the rules related thereto must be carefully crafted to avoid placing "the onus of the remedy" upon the child as opposed to the receiving parent. *Id.* at 354.

There is no question that the *Clay* court openly entertained the idea of categorically permitting recoupment of overpaid child support following a successful appeal. *Id.*

1. Initially, Daniel was ordered to pay $812.50 in monthly child support. That amount was decreased to $558.50 per month upon the emancipation of the parties' older child in June 2011.

at 353–54. However, the Court ultimately rejected that approach and decided that the better approach was, generally, to disallow recoupment or restitution in the event a support order is reversed or vacated on appeal. *Id.* We say generally because *Clay* relied almost exclusively on, and quoted extensively from, the Maryland Court of Appeals case of *Rand v. Rand,* 40 Md.App. 550, 392 A.2d 1149 (1978), which did recognize an exception.

As *Clay* quoted *Rand:*

> If the direct recipient—the custodial parent, usually—has not, in fact, expended the "overpayment" for the support of the child and has it, or its equivalent (in whole or in part), available for repayment, it is only fair and just that the paying parent be able to recover it.

*Clay,* 707 S.W.2d at 354 (quoting *Rand,* 392 A.2d at 1152) (emphasis added). Therefore, when *Clay* was rendered, the law in Maryland was that if the child support payee still "has it [the child support payment], or its equivalent[,]" then the payor may recover it.

■ Influenced by the reasoning in *Rand, Clay* carved out an exception to the general prohibition against recoupment— "restitution or recoupment of excess child support is inappropriate unless there exists an accumulation of benefits not consumed for support." *Clay,* 707 S.W.2d at 354. Thus, in order for recoupment to be had for previously paid child support, there must be unexpended child support funds from which recoupment can be made. *Id. Clay* reiterated that "it would be an exceptional case, indeed, where support payments exceed the requisite amount necessary for support as mandated by [KRS [2] 403.210]." *Id.*

■ In this case, Karen testified during the May 2013 hearing that she always expended the child support she received from Daniel for the benefit of their children, and that the children's needs greatly exceeded the amount of child support received. Karen confirmed that no child support had ever been deposited into the children's savings accounts, and that she had not accumulated any funds from unspent child support. Daniel tendered no evidence contradicting Karen's testimony. Accordingly, we find no accumulation of unexpended child support funds from which Daniel may recoup the amount overpaid.

■ Daniel insists, however, that recoupment is still possible—and required— because the children's college savings accounts, which he argues represent funds "equivalent" to child support, are available for repayment. Daniel points us to and emphasizes the quoted language in *Clay* from *Rand* referring to the availability of the overpayment "or its equivalent" and the fairness of tapping into those equivalent funds for recoupment. *Clay,* 707 S.W.2d at 354 (quoting *Rand,* 392 A.2d at 1152). Still, we cannot agree with Daniel's analysis.

While *Clay* certainly quoted from *Rand* at length, our Court did not adopt *that* language as the rule in Kentucky. The *Clay* court specifically chose not to include child support "equivalents" in the recitation of its ruling. The controlling part of *Clay* is not its quotation of *Rand,* but what it distilled from that decision. The ruling in *Clay* is clear. For clarification purposes, we quote again *Clay*'s holding: "restitution or recoupment of excess child support is inappropriate *unless there exists an accumulation of benefits not consumed for support.*" *Clay,* 707 S.W.2d at 354 (emphasis added).

2. Kentucky Revised Statute

In any event, even if we chose to read *Clay* as permitting recoupment from an accumulation of unexpended child support funds, or its equivalent—which we do not—we decline to declare the children's college savings accounts in this case "equivalent" of unexpended child support. The parties established the accounts in question during their marriage and pursuant to the Kentucky Uniform Transfers to Minors Act, KRS 385 *et seq.* Once money is deposited in such an account the transfer is "irrevocable, and the custodial property is indefeasibly vested in the minor[.]" KRS 385.112. Accordingly, we do not think the children's college savings accounts qualify as "equivalent" unexpended child support, even under Maryland law as expressed in *Rand.*

Furthermore, one child has previously emancipated, and the remaining minor child will graduate high school in June 2014. Both parties testified during the May 2013 hearing concerning the latter child's desire to attend college. Accordingly, the equities certainly weigh in favor of not disturbing the children's college savings accounts.

For the foregoing reasons, we affirm the Oldham Family Court's July 31, 2013 order.

ALL CONCUR.